IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

**EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION,**

**Plaintiff**

v.

**BIMBO BAKERIES USA, INC.,
and STROEHMANN BAKERIES,
L.C.,**

**Defendants**

CIVIL NO. 1:09-CV-1872

## **M E M O R A N D U M**

Plaintiff, the Equal Employment Opportunity Commission,("EEOC"), brought this action under Title VII of the Civil Rights Act of 1964 and Title I of the Civil Rights Act of 1991, on behalf of Henry T. Hairston, who is African-American, and a class of similarly situated African-American employees, all of whom the EEOC alleges were adversely affected by a hostile work environment at Defendants' Harrisburg, Pennsylvania plant. Defendant Bimbo Bakeries, Inc. is the parent company of Defendant Stroehmann Bakeries, L.C.[1]

Before the court is Defendants' motion to dismiss the Complaint. Defendants assert two grounds for dismissal: (1) The EEOC did not fulfill its

---

[1] Based upon the allegations in the Complaint and the administrative record, Henry Hairston and the other affected employees worked at a Stroehmann Bakery plant in Harrisburg, PA. (*See* Doc. 1, Compl. ¶ 7; Doc. 6-2, Charge of Discrimination.) In their motion to dismiss, Defendants state that all employees were employed by Stroehmann Bakeries, L.C., not by Bimbo Bakeries USA, Inc., and that Bimbo Bakeries is not a proper Defendant in this action. (*See* Doc. 5, Mem. of Law in Support of Mot. to Dismiss, at 6 n.1.) However, in a September 21, 2009 letter, Defendants' counsel — Michael Puma, Esquire — stated, in response to an Amended Determination by the EEOC, that Morgan Lewis "represent[s] Respondent Bimbo Foods, Inc., incorrectly named as Stroehmann Bakeries in the above-referenced Charge of Discrimination." (Doc. 6-7, Sept. 21, 2009 Ltr. from M. Puma to A. Gomez.) Thus, it is at best ambiguous who the employer is for Title VII liability purposes, but since that issue is not directly before the court at this point, the court will simply assume, for the purpose of deciding the motion presently before it, that *both* Defendants are proper parties to this action.

statutory obligation to pursue conciliation of the dispute in good faith; and (2) the claims fail to state a cognizable Title VII violation as a matter of law. For the reasons that follow, the motion to dismiss will be granted in part as to Plaintiff's allegation of constructive discharge. Furthermore, the court concludes that the EEOC did not conciliate the dispute in good faith; however, rather than dismiss the case, the court will stay the proceedings for sixty days so as to allow the EEOC to fulfill its statutory obligation to conduct a good faith conciliation. If conciliation fails, the EEOC will be permitted to amend its complaint to correct the deficiencies noted in this memorandum.

I. **Background**

   A. **Facts**

The following facts are drawn from the EEOC's complaint, as well as the records relating to the EEOC administrative proceeding.[2]

Henry Hairston was employed as a Production Operator in Defendants' Harrisburg, Pennsylvania bakery from March 27, 2003, until he resigned on February 9, 2007. (Doc. 1, Compl., ¶ 7(a), 7(d).) During some of this time, Defendants also employed Anthony Gross[3] and Dave Nelson in their Harrisburg

---

[2]In deciding a motion to dismiss, district courts are permitted to consider the charge filed with the EEOC, and related EEOC documents, including the letter from EEOC summarizing its investigation, the right to sue letter, and intake questionnaire. These are either undisputed documents referenced in the complaint or are central to Plaintiff's claim, or are information which is a matter of public record. *Rogan v. Giant Eagle, Inc.*, 113 F. Supp. 2d 777, 780-81 (W.D. Pa. 2000); *see also Graham v. United Postal Serv.*, 519 F. Supp. 2d 801 (N.D. Ill. 2007); *Equal Employment Opportunity Comm'n v. Woodmen of World Life Ins. Soc.*, 330 F. Supp. 2d 1049 (D. Neb. 2004). The court may consider these documents without converting defendant's motion to dismiss to one for summary judgment. *See id.*

[3]In the Complaint, Plaintiff identifies one of the other affected individuals as Terry Gross.
(continued...)

bakery. (*Id.*, ¶ 7(b).) Each of these individuals is African-American. (*Id.*) Collectively, these individuals will be referred to as Complainants.

Beginning in October 2006, and continuing through January 2007, a white co-worker of the Complainants made racially derogatory comments about African-Americans. (*Id.*; Doc. 6-3, EEOC Determination.) On one occasion, the co-worker stated: "I am tired of being a plant nigger." (Doc. 1, Compl., ¶ 7(b); Doc. 6-3, EEOC Determination.) On another occasion, the co-worker stated that the machines at the bakery were "nigger rigged." (*Id.*) On another occasion, the co-worker stated that he could have gotten a job with the U.S. Postal Service; however, they were only hiring "dumb niggers from Harrisburg." (*Id.*) Finally, the co-worker stated directly to Henry Hairston: "Nothing against you, but there are cool black people and there are also niggers." (*Id.*) After each of these comments, Henry Hairston complained to Defendants' management about the remarks, and was assured that it would be addressed. (Doc. 1, Compl., ¶ 7(c).) Nothing changed and Hairston believed that the working environment became so intolerable that he could no longer work there and resigned his employment on February 9, 2007. (*Id.*, ¶ 7(d).)

### B. Procedural/Administrative Background

On July 5, 2007, Henry Hairston filed a Charge of Discrimination with the EEOC. (*See* Doc. 6-2, Charge of Discrimination.) In his Charge of Discrimination, Hairston alleged that he experienced a racially hostile work environment based on the comments of his co-worker and the fact that Defendants

---

[3] (...continued)
(Doc. 1, Compl., ¶ 7(b)). However, the Charge of Discrimination filed by Henry Hairston identifies this individual as "Tony Gross," (Doc. 6-2), and Defendants' brief in support of its motion to dismiss identifies this individual as Anthony Gross, (Doc. 5 at 6 n.2.)

took no corrective action. Hairston alleges that the situation was so severe that he had no alternative but to quit, and was therefore constructively discharged.

The EEOC began an investigation and assigned investigator Ana Gomez to the charge.[4] Gomez sent Defendants letters on October 3, 2007 and on February 13, 2008 requesting information. (*See* Doc. 7-4 at 9 of 81, 17 of 81.) On March 3, 2008, Defendants submitted a three-page position statement that did not respond to the factual allegations, but instead stated Defendants' position that the Charge of Discrimination did not amount to an actionable hostile work environment. (*See id.* at 20 of 81.) By letters dated July 22, 2008, August 13, 2008, August 29, 2008, and September 10, 2008 the EEOC attempted to get information from Defendants concerning Henry Hairston's employment. (*See id.* at 24, 32, 35, and 38 of 81.) The EEOC did receive portions of the information that it requested, but not the bulk of it. By letters dated September 23, 2008 and March 4, 2009, the EEOC again requested information from Defendants. (*Id.* at 40 of 81 and 43 of 81.) None was forthcoming.

On August 19, 2009, the EEOC issued its Determination Letter finding that reasonable cause existed to believe that Defendants violated Title VII with respect to Hairston by taking no steps to remedy the racially hostile work environment created by Hairston's white co-worker. (Doc. 7-4 at 53-55 of 81.) The EEOC also determined that the racially hostile work environment was so severe that Hairston's resignation constituted constructive discharge. (*Id.*) On September 3, 2009, the EEOC issued an Amended Determination Letter finding that the hostile

---

[4]The EEOC's brief in opposition sets forth and chronology of events that does not make sense. For instance, it states that Mr. Hairston filed his charge of discrimination on July 12, 2007, (Doc. 7, ¶ 1), and that the EEOC began its investigation on February 22, 2007, (*id.*, ¶ 4.) It is difficult to see how this chronology can be correct.

work environment extended not only to Hairston but also to a class of African-American individuals.

Included with the September 3, 2009 Amended Determination was a proposed Conciliation Agreement. That agreement requested Defendants to respond within ten days. Defendants assert that they did not receive a complete copy of the agreement until September 11, 2009. (*See* Doc. 6-5, Sept. 11, 2009 faxed copy of Amend. Determination Ltr. and Conciliation Agreement.) On September 21, 2009, Defendants sent the EEOC a letter signed by Defendants' attorney Michael Puma, Esquire. The letter reads, in relevant part, as follows:

> I am writing in response to the conciliation agreement proposed by the [EEOC] to resolve this matter. . . . Based on our review of the [EEOC's] Determination dated August 19, 2009, and the [EEOC's] Amended Determination dated September 3, 2009, however we do not believe that the [EEOC] has received all of the relevant information. Accordingly, we would like to arrange a meeting with you to share additional information that bears on our position with respect to the Commission's conciliation proposal, and to discuss our response to that proposal. At your convenience, please let me know if there are dates in October when you could be available for that meeting.

(Doc. 6-7, Sept. 21, 2009 Ltr. from Michael J. Puma, Esq. to Ana Gomez.)

In response, on September 22, 2009, the EEOC sent a letter to Defendants' attorney, which reads, in relevant part:

> This responds to your letter of September 21, 2009, presumably seeking to request reconsideration and to resume the investigation.
>
> For two years, EEOC diligently sought information from Respondent, through your law firm. Please refer to EEOC Requests for Information dated July 22, 2007, July 22, 2008, and March 4, 2009. Moreover, EEOC urged Respondent to do so through phone calls. Finally, in a letter dated September 10, 2009, to your law firm, Respondent was requested to cooperate in the conciliation processing. EEOC has provided ample opportunity for Respondent to supply whatever information Respondent

> deemed necessary to respond to the charge. Respondent's belated offer, as the conciliation period expired, to supply additional information appears to be no more than additional delay and recalcitrance.
>
> Accordingly, your request for reconsideration/continued investigation has been denied. Moreover, because you have failed to engage in conciliation discussions, enclosed please find the Failure of Conciliation letter.

(Doc. 6-8, Sept. 22, 2009 Ltr. from Marie M. Tomasso to Michael J. Puma.) On September 29, 2009, the EEOC filed the instant action.

## II. Legal Standard

When presented with a motion to dismiss for failure to state a claim, the court is required to conduct a two-part analysis. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). First, "the factual and legal elements of the claim should be separated," the court "must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions." *Id.* Second, the court must determine "whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Id.* at 211 (quoting *Ashcroft v. Iqbal*, ___U.S.___, 129 S. Ct. 1937, 1950 (2009)).

The complaint must do more than allege the plaintiff's entitlement to relief; it must "show such an entitlement with its facts." *Fowler,* 578 F.3d at 211 (citations omitted). As the Supreme Court instructed in *Iqbal*, "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 129 S. Ct. at 1950 (quoting Fed. R. Civ. P. 8(a) (alterations in original).) In other words, a claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1949 (citing *Bell Atl.*

6

*Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." *Id*.

"To decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) (citations omitted); *see also Sands v. McCormick*, 502 F.3d 263, 268 (3d Cir. 2007). The court may consider "undisputedly authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] document[s]." *Pension Benefit*, 998 F.2d at 1196. Additionally, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." *Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002) (citation omitted); *see also U.S. Express Lines, Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002) ("Although a district court may not consider matters extraneous to the pleadings, a document *integral to or explicitly relied* upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment.") (emphasis in original)(internal quotation omitted). However, the court may not rely on other parts of the record in making its decision. *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994).

Finally, in the Third Circuit, a court must grant leave to amend before dismissing a civil rights complaint that is merely deficient. *See, e.g., Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247,252 (3d Cir. 2007); *Weston v. Pennsylvania*, 251 F.3d 420, 428 (3d Cir. 2001); *Shane v. Fauver*, 213 F.3d 113, 116-17 (3d Cir. 2000). "Dismissal without leave to amend is justified

only on the grounds of bad faith, undue delay, prejudice, or futility." *Alston v. Parker*, 363 F.3d 229, 236 (3d Cir. 2004).

**III.** **Discussion**

In their motion to dismiss, Defendants contend that the EEOC's complaint should be dismissed for two reasons: (1) because the EEOC failed to fulfill its statutory obligation to engage in good faith conciliation efforts; and (2) contents of the complaint fail to state a claim upon which relief can be granted. The court will address each of these arguments starting with the latter.

**A.** **Failure to state a claim**

Putting aside the question of whether the EEOC complied with its statutory obligation to engage in good faith pre-complaint conciliation efforts, Defendants argue that the complaint fails to state a claim upon which relief can be granted.

Title VII of the Civil Rights Act of 1964 forbids employment discrimination against any individual based on that individual's "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-(2)(a). The Supreme Court has specifically recognized that Title VII prohibits an employer from engaging in racial harassment that creates a hostile or offensive work environment. *Patterson v. McLean Credit Union*, 491 U.S. 164, 180 (1989); *Meritor Savings Bank v. Vinson,* 477 U.S. 57, 65 (1986). As the Supreme Court recognized in *Meritor*, "Title VII affords employees the right to work in an environment free from discriminatory intimidation, ridicule, and insult." 477 U.S. at 65. Thus, individuals who are not directly discriminated against may assert a claim of hostile work environment; the statutory basis of which is the notion that "discriminatory ridicule or abuse can so infect a workplace that it alters the terms or conditions of the plaintiff's

8

employment." *Jensen v. Potter*, 435 F.3d 444, 449 (3d Cir. 2006), *overruled in part on other grounds by Burlington N. & Santa Fe Ry. Co., v. White,* 548 U.S. 53 (2006).

In the instant case, the EEOC asserted a claim of a hostile work environment due to the comments of Hairston's white co-worker from October 2006 and continuing through January 2007. To support such a claim, the EEOC must demonstrate that Hairston and the class of African-American co-workers (1) suffered intentional harassment based on race; (2) the harassment was severe or pervasive;[5] (3) the harassment detrimentally affected them; (4) the harassment would have detrimentally affected a reasonable person in like circumstances; and (5) there is a basis for employer liability. *See Jensen*, 435 F.3d at 449. Defendants focus on the second prong and argue that the conduct complained of by Hairston was not severe or pervasive enough to constitute a hostile work environment. Defendants also assert that the complaint contains insufficient factual allegations to sustain the EEOC's allegation that Hairston was constructively discharged.

### 1. <u>Hostile Work Environment</u>

A hostile work environment cannot be analyzed on an incident-by-incident basis, but rather the court must examine the totality of the circumstances. *Konstantopoulos v. Westvaco Corp.*, 112 F.3d 710, 715 (3d Cir. 1997). While simple teasing, off-hand comments, and isolated incidents usually do

---

[5] The Third Circuit has often stated that discriminatory harassment must be "severe and pervasive." *See e.g., Cardenas v. Massey*, 269 F.3d 251, 260 (3d Cir. 2001); *West v. Philadelphia Elec. Co.*, 45 F.3d 744, 753 (3d Cir. 1995); *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1482 (3d Cir. 1990). But the Supreme Court's standard is "severe or pervasive." *Pa. State Police v. Suders*, 542 U.S. 129, 133 (2004). As the Third Circuit recognized in *Jensen*, "the difference is meaningful, and the Supreme Court's word controls." 435 F.3d at 449 n. 3. By using the disjunctive "or" the Supreme Court clearly meant that "severe" and "pervasive" are alternative possibilities. In other words, some conduct, although isolated and sporadic, may be severe enough to contaminate the workplace; whereas, other, less objectionable, conduct must be pervasive in order to contaminate the workplace such that it meets the threshold under the second prong of a hostile work environment claim.

not amount to discriminatory changes in the terms and conditions of employment, the use of racial epithets—especially the word "nigger," which has a long and sordid history in this country—can quickly change the atmosphere, environment, and culture of a workplace from positive to poisonous. *See Rodgers v. W. S. Life Ins. Co.,* 12 F.3d 668, 675 (7th Cir. 1993) (finding that the use of the word "nigger" on just two occasions contributed to a hostile work environment); *Bailey v. Binyon*, 583 F. Supp. 923, 927 (N.D.Ill. 1984) ("The use of the word 'nigger' automatically separates the person addressed from every non-black person; this is discrimination *per se*.") The allegations contained in the EEOC's complaint, while sparse, are sufficient to plausibly give rise to a hostile work environment. At this stage of the proceeding this is all that is required. *See Ashcroft v. Iqbal*, ___U.S.___, 129 S. Ct. 1937, 1949 (2009) (stating that a claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

## 2. Constructive Discharge

Defendants also suggest that the EEOC's complaint does not plausibly assert a basis for claiming that Hairston's resignation constituted a constructive discharge. To establish a valid constructive discharge claim, a plaintiff must prove that the employer knowingly permitted a discriminatory condition to persist that was so intolerable that a reasonable person would have felt compelled to resign. *See Duffy v. Paper Magic Corp. Inc.,* 265 F.3d 163 (3d Cir. 2001). Here the EEOC's complaint clearly pleads that the use of racial epithets became intolerable to Hairston and others. However, "[i]ntolerability is not established by showing . . . that the employee subjectively felt compelled to resign; presumably every resignation occurs because the employee believes that it is in his best interest to resign." *Connors v. Chrysler Fin. Corp.*, 160 F.3d 971, 976 (3d Cir.1998) (citation

10

omitted). Instead, courts should assess intolerability "by the objective standard of whether a reasonable person in the employee's position would have felt *compelled to resign*,-that is, whether he would have had no choice but to resign." *Id*. (citation omitted)(emphasis added).

Here, the EEOC's complaint alleges simply that "the work environment became so intolerable, resulting in Henry Hairston's constructive discharge." (Doc. 1, Compl. ¶ 7(d).) These allegations are insufficient. Only if the facts alleged "raise a right to relief above the speculative level" such that the plaintiff's claim is "plausible on its face," will a complaint survive a motion to dismiss. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007); *see also Iqbal*, 129 S. Ct. at 1950 ("[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'") (quoting Fed. R. Civ. P. 8(a)) (alterations in original). Based on the paucity of facts alleged by the EEOC, the court cannot reasonably infer that Henry Hairston was compelled to resign his position. This is not to say that circumstances of his employment were not affected by the racial epithets used by his co-worker, merely that the EEOC has insufficiently pled a constructive discharge claim.

In the Third Circuit, a court must grant leave to amend before dismissing a civil rights complaint that is merely deficient. *See, e.g., Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247,252 (3d Cir. 2007); *Weston v. Pennsylvania*, 251 F.3d 420, 428 (3d Cir. 2001); *Shane v. Fauver*, 213 F.3d 113, 116-17 (3d Cir. 2000). Accordingly, the court will permit the EEOC to file an amended complaint in order to allege sufficient facts that raise its right to relief on its constructive discharge claim above the speculative level. The EEOC will also be permitted to supplement its allegations as to its hostile work

environment claim. Although the court has determined that claim is sufficiently pled, the factual allegations are sparse, and there is no doubt that additional facts would bolster the claim's plausibility. The court will now address Defendants' argument that the case should be dismissed for failure of the EEOC to engage in good faith conciliation.

### B. Conciliation

Before the EEOC may bring a Title VII suit against a private employer, "there must be a charge filed with the EEOC, notice of the charge served on the employer, an investigation by the EEOC, a determination of reasonable cause, and an effort at conciliation." *EEOC v. Dial Corp.,* 156 F. Supp. 2d 926, 933-34 (N.D. Ill. 2001) (citing *EEOC v. Am. Nat. Bank,* 652 F.2d 1176, 1185 (4th Cir. 1981); 42 U.S.C. §2000e-5(b).) The EEOC is charged with making a "good faith" effort to conciliate before filing suit. *Id.* at 940. Conciliation, however, is a flexible process and is not unduly onerous; the EEOC's compliance with its obligation to conciliate is measured by the effort that it expends. *See EEOC v. Hugin Sweda, Inc.*, 750 F. Supp. 165, 167 (D.N.J. 1990). So long as the EEOC makes a "sincere and reasonable effort to negotiate," so that both parties have the opportunity to put their respective proposals on the table, the statutory obligation to conciliate in good faith has been met. *Dial Corp.*, 156 F. Supp. 2d. at 940.

Based on the record in this case, the court concludes that the EEOC did not conciliate in good faith. A mere eleven days passed between the time Defendants received a final determination by the EEOC and the proposed conciliation agreement and the EEOC determined that conciliation would be futile. In its brief, the EEOC points out that Defendants repeatedly failed to provide it with the information required to conduct its investigation, which caused the investigation to drag on for more than two years, and that it was with this framework in mind that

the EEOC decided that they would not extend additional time to Defendants during the conciliation process. The EEOC further argues that Defendants' counsel's September 21, 2009 letter was not a response to the request to conciliate, but rather was a request to reopen the investigation.

The court is sympathetic to these arguments and appreciates the frustration of the EEOC. Nevertheless, Title VII does not permit the EEOC to obdurately refuse to conciliate simply because Defendants were dilatory during the investigation of the claim. Faced with an opening for conciliation, the EEOC slammed the administrative door closed because of its frustration with Defendants' prior conduct. While this is understandable, Title VII requires more.

A straight forward and reasonable reading of Defendants' September 21, 2009 letter demonstrates that, at a minimum, Defendants were asking for a conciliation conference in an attempt to resolve the dispute. (*See* Doc. 6-7, Sept. 21, 2009 Ltr. from Michael J. Puma, Esq. to Ana Gomez.) While a conference is not required, "the failure to hold a conciliation conference has been an important factor in determining that the EEOC has not fulfilled its statutory duty to conciliate." *Hugin Sweda, Inc.*, 750 F. Supp. at 167; *see also EEOC v. Am. Express Pub. Corp.*, 681 F. Supp. 216, 219 (S.D.N.Y. 1988); *EEOC v. One Bratenahl Place Condo. Ass'n*, 644 F.Supp. 218, 221 (N.D. Ohio 1986)("Such a meeting would have provided a forum for the free exchange of ideas and proposals to hopefully reach mutually-accepted remedies."). Based on the administrative record in this case, the court concludes that the EEOC prematurely aborted the conciliation process and therefore failed to fulfill its statutorily prescribed duty to obtain voluntary compliance.

Contrary to the assertions of Defendants, however, the EEOC's failure to comply with its statutory obligation does not mean that the court must dismiss the

case. Title VII commits to the sound discretion of the district court the decision whether to stay proceedings for further efforts at conciliation or dismissal of the action. *See* 42 U.S.C. § 2000e-5(f)(1); *EEOC v. Agro Dist. LLC.,* 555 F.3d 462, 469 (5th Cir. 2009); *EEOC v. Asplundh Tree Expert Co.,* 340 F.3d 1256, 1259 n.1 (11th Cir. 2003); *Hugin Sweda, Inc.*, *supra,* 750 F. Supp. at 167-68. The court believes that dismissal of this suit would be far too draconian. Faced with the choice of requiring the parties to conciliate the case in good faith or dismiss the case, this court chooses conciliation. Accordingly, the court will stay this action for a period of sixty days and require the parties to engage in a good faith effort to conciliate the dispute. While not mandating that it occur, the court strongly recommends that the parties have a conciliation conference so as to allow an adequate back and forth between the parties; such a meeting will allow Defendants to respond to the charges and hopefully produce a mutually agreeable resolution.

## IV. Conclusion

In accordance with the foregoing, the court will stay this action until Friday, April 16, 2010, and require the parties to engage in a good faith effort to conciliate the dispute through the EEOC's conciliation process. If this conciliation resolves the dispute, the EEOC shall promptly notify the court of the resolution. If conciliation is unsuccessful, the EEOC shall submit a status report to the court detailing the efforts made at conciliating the dispute, and it shall then file an amended complaint correcting the deficiencies noted in this memorandum by no later than Monday, April 26, 2010. An appropriate order follows.

s/Sylvia H. Rambo
United States District Judge

Dated: February 17, 2010.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,** | : : : |
| **Plaintiff** | : : **CIVIL NO. 1:09-CV-1872** |
| v. | : : : |
| **BIMBO BAKERIES USA, INC., and STROEHMANN BAKERIES, L.C.,** | : : : : |
| **Defendants** | : : |

**O R D E R**

In accordance with the accompanying memorandum of law, **IT IS HEREBY ORDERED THAT** Defendants' motion to dismiss Plaintiff's complaint, (Doc. 4), is **GRANTED IN PART AND DENIED IN PART** as follows:

(1)  The motion is **GRANTED** as to Plaintiff's constructive discharge claim. Plaintiff shall file an amended complaint by no later than April 26, 2010;

(2)  The motion is **DENIED** in all other respects; and

(3)  This case is **STAYED** until April 16, 2010. During the stay, the parties shall engage in a good faith attempt to resolve this dispute through the EEOC's conciliation process. If the case is resolved through conciliation, Plaintiff shall promptly notify the court. If the case is unresolved by conciliation, Plaintiff shall submit a status report to the court detailing the efforts made at conciliating the dispute.

s/Sylvia H. Rambo
United States District Judge

Dated: February 16, 2010.